**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

MICHAEL T. COCHRAN,

        Plaintiff,

v.                                         Case No.  18-1132-JWB

CITY OF WICHITA, et al.,

        Defendants.

## MEMORANDUM AND ORDER

This case comes before the court on Defendants' motion to dismiss (Doc. 24).  The motion has been fully briefed and is ripe for decision.  (Docs. 26, 27, 30, 31.)  Defendants' motion is GRANTED for the reasons stated herein.

## I.      Facts and Procedural History

Plaintiff is homeless and proceeding pro se in this action.  Plaintiff brings this action pursuant to 42 U.S.C. § 1985.  Plaintiff's complaint alleges that Defendants, members of the Wichita City Council and several Wichita Police Department officers, conspired to enact Chapter 5.20 of the City Code which prohibits camping on public property.  Section 5.20.020 states in pertinent part:

> "Unlawful Camping. It is unlawful and a public nuisance for any person or persons to camp in or upon any public property or public right of way, unless such person or persons have been granted a temporary permit allowing such activity as set forth in Section 5.20.040 of this chapter, or the individual or individuals are deemed homeless and there are no appropriate shelters available for them."

(Doc. 30, Exh. 1 at 6.)

The applicable camping code sections were enacted "to maintain streets, parks and other public property and areas within the City of Wichita in a clean, sanitary and accessible condition and to adequately protect the health, safety and public welfare of the community…." (*Id.* at 5.)[1] Plaintiff has not been charged with a violation of Chapter 5.20.

Plaintiff alleges that he arrived in Wichita, Kansas, in June 2015. In August, Plaintiff set up a tent with his belongings on the City of Wichita's ("City") property located at 6919 E. Osie Cir. Plaintiff did not observe any signs that stated that the property belonged to the City. Plaintiff was never told by anyone that he was trespassing or that camping was illegal on the property. On February 15-17, 2016, Plaintiff observed a white van parked outside his tent with a license plate number that began with "CNR." On February 19, 2016, Plaintiff returned to his tent and discovered that all of his property was missing. Plaintiff was forced to go to a shelter as a result. (Doc. 1 at 4-5.)

On February 21, Plaintiff returned to the area where his campsite had been to look for evidence of who took his belongings. While at the E. Osie location, Plaintiff observed a tent with a "notice to vacate" sign that included a phone number for the Wichita Police Department's Homeless Outreach Team ("HOT Team"). Plaintiff returned to the winter shelter. On February 22, Plaintiff called the HOT Team line and spoke with Defendant Lisa Berg. Plaintiff asked if the HOT Team had taken his belongings. Berg asked Plaintiff where the belongings had been and then informed Plaintiff of the no camping ordinance. Berg allegedly told Plaintiff that they could take whatever they wanted from whomever they wanted to. Plaintiff told Berg that he didn't get a notice although there was a notice on another person's tent. Berg allegedly stated that if one person got notice then they all got notice. Berg then stated that she had no idea if they

---

[1] The court takes judicial notice of Ordinance 49-515, which sets forth Chapter 5.20 of the City of Wichita Code. *See Zimomra v. Alamo Rent-A-Car, Inc.*, 111 F.3d 1495, 1504 (10th Cir. 1997) (appropriate for a court to take judicial notice of a municipal code).

had removed any of his property. Plaintiff left his phone number with Berg so that she could check into his property claim but she did not call him back. (Doc. 1 at 5-7.)

Based on a liberal reading of Plaintiff's complaint, Plaintiff assumes, based on the presence of the white van and the notice to vacate sign on a different tent, that his tent and belongings were taken or disposed of by an unknown member of the HOT Team. Due to the removal or theft of Plaintiff's tent and belongings, Plaintiff alleges that he was "forcefully interned" at the over-flow shelter until March 31 and then "forcibly interned" at the Union Gospel Mission until May 27, 2016, both under cruel and unusual conditions. (Doc. 1 at 8.) On the evening of May 26, Plaintiff stayed at the shelter and parked his moped in the parking lot. On May 27, Plaintiff went to the parking lot and his moped was gone. Plaintiff reported the theft to the Wichita police. Plaintiff's complaint does not allege that an individual Defendant or City employee removed his moped. Plaintiff has not returned to the Mission. Plaintiff alleges that he lost his job due to the theft of his moped.[2] (Doc. 1 at 8.)

On November 15, 2016, Defendant Nate Schwiethale, an officer with the HOT Team, was responding to a complaint about someone sleeping outside in an area in downtown Wichita. Schwiethale approached Plaintiff and questioned him regarding the complaint. Plaintiff accused Schwiethale of taking his property. Plaintiff alleges that Schwiethale stated that Plaintiff would not be arrested and that he was there to help Plaintiff. Schwiethale allegedly admitted to the use and possession of a white van for the HOT Team and stated that the police can take anything they want. (Doc. 1 at 9-10.)

On June 5, 2017, Plaintiff filed a lengthy complaint in this court asserting numerous claims against several defendants. (*See* Case No. 17-CV-1127, Doc. 1.) Plaintiff's complaint

---

[2] As best the court can determine from the complaint, Plaintiff's logic is that all the foregoing calamities, most of which did not involve a Defendant or City Employee, give rise to claims against the Defendants because the alleged enforcement of the disputed ordinance is the event that somehow set all these events in motion.

included claims against the same Defendants named in this action. Plaintiff also made similar allegations of a conspiracy in enacting the no camping ordinance and violations of his constitutional rights. (*See id.*) Magistrate Judge Birzer determined that Plaintiff's complaint failed to comply with Fed. R. Civ. P. 8 and ordered Plaintiff to file an amended complaint that complied with the rule or face dismissal. Plaintiff filed an amended complaint that was 207 pages long and raised the issues discussed herein in addition to other allegations and claims against several other government officials. (*See* Case No. 17-CV-1127, Doc. 15.) Judge Melgren dismissed Plaintiff's amended complaint, without prejudice, for failing to comply with Rule 8. (*See* Case No. 17-CV-1127, Doc. 21.)

Plaintiff's complaint in this case alleges a violation of 42 U.S.C. § 1985 due to Defendants' alleged conspiracy to enact the camping ordinance. Plaintiff further alleges that the camping ordinance deprives him of various rights under the First, Fourth, Fifth, Sixth, Eighth, Ninth and Fourteenth Amendments to the Constitution. Plaintiff contends that he has a constitutional right to be homeless. Plaintiff alleges that all Defendants conspired to enact the ordinance, deprived him of his property and forcibly interned him at the shelter.

Defendants have now all moved to dismiss. Defendants contend that Plaintiff's claims are subject to dismissal under Rules 12(b)(1) and 12(b)(6).

## II.     Standards Under Rule 12(b)(1)

"Different standards apply to a motion to dismiss based on lack of subject matter jurisdiction under Rule 12(b)(1) and a motion to dismiss for failure to state a claim under Rule 12(b)(6)." *Muscogee (Creek) Nation v. Pruitt*, 669 F.3d 1159, 1167 (10th Cir. 2012). When the court is faced with motions for dismissal relying on both Rule 12(b)(1) and 12(b)(6), the court must first determine that it has subject matter jurisdiction over the controversy before reviewing

the merits of the case under Rule 12(b)(6). *Bell v. Hood*, 327 U.S. 678, 682, 66 S. Ct. 773 (1946). Because federal courts are courts of limited jurisdiction, a presumption exists against jurisdiction, and "the burden of establishing the contrary rests upon the party asserting jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377, 114 S. Ct. 1673 (1994). Therefore, the court will first review the challenge to subject matter jurisdiction.

"Motions to dismiss for lack of subject matter jurisdiction generally take one of two forms: (1) a facial attack on the sufficiency of the complaint's allegations as to subject matter jurisdiction; or (2) a challenge to the actual facts upon which subject matter jurisdiction is based." *City of Albuquerque v. U.S. Dep't of Interior*, 379 F.3d 901, 906 (10th Cir. 2004) (internal citations omitted). If the motion challenges the sufficiency of the complaint's jurisdictional allegations, such as in this case, the court must accept all such allegations as true. *Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir. 1995). If there is a challenge to the actual facts, the court has discretion to allow affidavits and other documents to resolve disputed facts. *Id.* at 1003. In this matter, the court has only considered the ordinance, which may be considered on a motion to dismiss as it is a municipal law and referenced in Plaintiff's complaint. *See Zimomra*, 111 F.3d at 1504.

In order to withstand a motion to dismiss for failure to state a claim, a complaint must contain enough allegations of fact to state a claim to relief that is plausible on its face. *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1974 (2007)). All well-pleaded facts and the reasonable inferences derived from those facts are viewed in the light most favorable to Plaintiff. *Archuleta v. Wagner*, 523 F.3d 1278, 1283 (10th Cir. 2008). Conclusory allegations, however, have no bearing upon the court's consideration. *Shero v. City of Grove, Okla.*, 510 F.3d 1196, 1200 (10th Cir. 2007).

### III.     Analysis

#### a. Subject Matter Jurisdiction

Article III of the Constitution limits federal courts' jurisdiction to certain cases and controversies. *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408, 133 S. Ct. 1138, 1146 (2013). Plaintiff must establish standing in order to invoke this court's jurisdiction. *Lujan v. Defs. of Wildlife,* 504 U.S. 555, 560–61, 112 S. Ct. 2130, 2136 (1992).  A court reviews standing for claims that seek both retrospective relief and prospective relief. *See Dias v. City & Cty. of Denver*, 567 F.3d 1169, 1176-78 (10th Cir. 2009).  To establish standing, there must be an "injury in fact"; Plaintiff must show a causal connection between the injury and the conduct complained of; and it must be likely that Plaintiff's injury will be "redressed by a favorable decision." *Lujan,* 504 U.S. at 560–61; *see also D.L.S. v. Utah*, 374 F.3d 971, 974 (10th Cir. 2004).

Under the "injury in fact" prong, Plaintiff's injury "must be actual or imminent, not conjectural or hypothetical." *D.L.S*, 374 F.3d at 974.  "Allegations of possible future injury do not satisfy the injury in fact requirement, though a plaintiff need not expose himself to actual arrest or prosecution to be entitled to challenge a statute that he claims deters the exercise of his constitutional rights." *Initiative & Referendum Inst. v. Walker*, 450 F.3d 1082, 1087–88 (10th Cir. 2006) (internal quotation marks and citations omitted).

Defendants argue that Plaintiff does not have standing because he has not been charged with a violation of the ordinance, he has not alleged that he was forced into a shelter to avoid a citation or that he was denied a camping permit.  (Doc. 30 at 7.)  Plaintiff responds that he has sufficiently alleged standing in that his property was taken without notice or due process.  (Doc. 31 at 8.)  Liberally construing his complaint, Plaintiff alleges that he has been detained by the

HOT Team and questioned because of camping in violation of the ordinance. (Doc. 1 at 9-10.) Plaintiff's complaint further alleges that as a result of his status as a homeless person he is subject to criminal punishment for violating the camping ordinance if there are beds available at the shelter. (*Id.* at 12, 14.)

Plaintiff's complaint seeks both injunctive relief and damages for alleged constitutional violations. "To establish standing to seek prospective relief, a plaintiff must show a continuing injury; standing for retrospective relief can be based on past injuries." *Dias v. City & Cty. of Denver*, 567 F.3d 1169, 1176 (10th Cir. 2009). "When a plaintiff challenges the validity of a criminal statute under which he has not been prosecuted, he must show a 'real and immediate threat' of his future prosecution under that statute to satisfy the injury in fact requirement." *D.L.S.*, 374 F.3d at 974 (citing *Faustin v. City and County of Denver, Colo.*, 268 F.3d 942, 948 (10th Cir. 2001)).[3]

Due to Plaintiff's allegations regarding encounters with the HOT Team and his continued status as a homeless individual in the city, the court finds that Plaintiff has standing to seek prospective relief. The complaint alleges that other homeless campers have received notices to vacate the area in which Plaintiff camps. He also alleges that he has had contact with HOT Team members who indicate an intent to continue enforcing the ordinance in the future. (Doc. 1 at 9-10.) The court further finds that Plaintiff has standing to assert claims for his alleged injuries that occurred in the past.

Therefore, Defendants' motion to dismiss on the basis that Plaintiff's complaint lacks subject matter jurisdiction is denied.

---

[3] The government cites to various opinions, outside of the Tenth Circuit, to argue that standing to establish a violation of an anti-camping statute can only be met in certain ways. (Doc. 30 at 6-7.) The Tenth Circuit, however, has set forth standing requirements to challenge municipal laws. This is the applicable standard and the court is not persuaded that a different standard would apply due to the content of the particular municipal law.

### b. Statute of Limitations

Defendants assert that several claims are barred by the statute of limitations and that Plaintiff's filing of his previous complaint in Case No. 17-CV-1127 did not toll the statute of limitations. Plaintiff argues that the filing of his previous action tolled the statute of limitations and, in any event, the statute of limitations did not begin to run until his moped was stolen. (Doc. 31 at 9-10.)

The applicable statute of limitations in §§ 1983 and 1985 actions is determined from looking at the appropriate Kansas statute of limitations. *See Hardin v. Straub*, 490 U.S. 536, 538, 109 S. Ct. 1998, 2000 (1989). In Kansas, K.S.A. § 60–513(a), governing personal injury actions, is the application statute of limitations for claims under 42 U.S.C. § 1983 and § 1985. *Brown v. Unified School Dist. 501, Topeka Public Schools*, 465 F .3d 1184, 1188 (10th Cir. 2006). The accrual of Plaintiff's claim, however, is a question of federal law. *Mondragón v. Thompson*, 519 F.3d 1078, 1082 (10th Cir. 2008). Plaintiff's claim accrues when he knows, or should know, that his rights have been violated. *Kripp v. Luton*, 466 F.3d 1171, 1175 (10th Cir. 2006). With respect to a conspiracy claim, the statute of limitations "runs separately from each overt act of the conspiracy that allegedly caused injury." *O'Connor v. St. John's Coll.*, 290 F. App'x 137, 141 (10th Cir. 2008). Therefore, the court will review all alleged conduct to determine whether it is barred by the statute of limitations. Plaintiff's claims are timely if the acts alleged to have violated his rights occurred within two years of filing his complaint or if the claims have been tolled under Kansas law.

Plaintiff's complaint alleges the following acts: 1) passage of the ordinance in 2013; 2) removal of his tent and items on February 19, 2016; 3) a phone conversation with Officer Berg on February 22, 2016; 4) theft of his moped on May 26, 2016; and 5) an interaction with

Schwiethale on November 15, 2016. Defendants assert that the only allegations that are timely are the theft of his moped and an interaction with Schwiethale.

Plaintiff's complaint was filed on May 9, 2018. Under Kansas law, however, the savings statute will toll the statute of limitations if the requirements set forth in K.S.A. § 60–518 have been satisfied. *Taylor v. Casey*, 182 F. Supp. 2d 1096, 1102 (D. Kan. 2002). Section 60-518 requires the following: 1) the first action was commenced within due time, 2) the first action failed "otherwise than upon the merits," 3) and the new action was commenced within six months of the failure. *Id.* The two actions must also be substantially similar. *Estate of Hammers v. Douglas Cty., Kan. Bd. of Comm'rs*, 303 F. Supp. 3d 1134, 1153 (D. Kan. 2018).

Case No. 17-CV-1127 was filed on June 5, 2017. Even if the remaining elements are established, section 60-518 would not save Plaintiff's claim pertaining to the passage of the ordinance in 2013 as it was clearly untimely in 2017. Under federal law, it is the overt act that begins the running of the statute and not the theft of the moped as asserted by Plaintiff. *See O'Connor*, 290 F. App'x at 141. Therefore, this claim is barred by the statute of limitations. The other four overt acts, however, all occurred within two years of the filing of the original complaint.[4] The remaining elements are satisfied because the action was not dismissed on the merits and the instant action was filed within six months of the dismissal.

Defendants assert that the savings statute does not save these claims because the two actions are not substantially similar. *See Estate of Hammers*, 303 F. Supp. 3d at 1153. Defendants argue that the claims are not substantially similar as there are "fewer defendants and the claims asserted are different in nature." (Doc. 30 at 9.) Defendants, however, fail to explain how the claims are different in nature. A review of the prior complaint shows that Plaintiff's

---

[4] The court notes that service was not completed on the defendants in the prior action because the court stayed service. Therefore, the delay of service was not due to inaction on Plaintiff's part.

allegations pertaining to the camping ordinance are contained therein. The prior complaint also included all of the defendants that are in this action. The prior complaint, however, had significantly more defendants and claims than are contained in the current complaint. Plaintiff argues that Defendants' logic would simply have him refile his prior complaint which would clearly be subject to dismissal. (Doc. 31 at 10.)

The court finds that the claims stated in this action are substantially similar to claims raised in the prior complaint. The differences in the complaints are due to Plaintiff reducing the number of claims and defendants named in the present action. The court finds that the elimination of claims and defendants does not lead to the conclusion that the actions are not substantially similar; they are similar as to the claims and defendants that Plaintiff has elected to pursue. By contrast, it seems rather ridiculous to conclude that a mere <u>reduction</u> in claims and defendants, while no new claims or new parties are added, would preclude application of the savings statute with respect to the claims and defendants in the new case. *See Marten v. Godwin*, No. 08-4031-EFM, 2009 WL 2475257, at *2-3 and n. 16 (D. Kan. Aug. 12, 2009) (discussing cases) ("Furthermore, as a practical matter, such an interpretation is illogical. As pointed out by William Westerbeke and Stephen McAllister in *Survey of Kansas Tort Law: Part 1*, 49 U. Kan. L. Rev. 1037, 1136 (June 2001), 'requiring the continuation of litigation against the individual defendants even though the plaintiff no longer believes the claim against him is legitimate conditions the use of the savings clause upon court-ordered malicious prosecution.'")

Therefore, with the exception of the 2013 overt act of passing the camping ordinance, Plaintiff's remaining allegations are not barred by the statute of limitations.

### c. Section 1985 - All Defendants

Defendants move to dismiss Plaintiff's claims pursuant to section 1985 on the basis that the allegations fail to state a claim upon which relief can be granted. Plaintiff's complaint alleges that Defendants conspired to violate his constitutional rights by enacting the ordinance, depriving him of his property and depriving him of other constitutional rights as a result of the ordinance.

Section 1985(3) provides a remedy for a conspiracy to violate a person's civil rights. *O'Connor*, 290 F. App'x at 141. The elements of a section 1985 claim are: "(1) a conspiracy; (2) to deprive plaintiff of equal protection or equal privileges and immunities; (3) an act in furtherance of the conspiracy; and (4) an injury or deprivation resulting therefrom." *Tilton v. Richardson*, 6 F.3d 683, 686 (10th Cir. 1993), *cert. denied*, 510 U.S. 1093, 114 S. Ct. 925 (1994). With respect to allegations of a conspiracy, the Tenth Circuit requires a plaintiff to allege a sufficient factual basis to support the existence of an agreement and concerted action between the co-conspirators. *Abercrombie v. City of Catoosa*, 896 F.2d 1228, 1230–31 (10th Cir. 1990). "Section 1985(3) conspiracy claims cannot stand on 'vague and conclusory allegations'; but rather, 'must be pled with some degree of specificity.'" *O'Connor*, 290 F. App'x at 141.

Plaintiff argues that he has alleged that the concerted action is the drafting and passing of the ordinance. (*See* Doc. 31 at 14.) As discussed, any action based on this alleged conduct is barred by the statute of limitations. Plaintiff's allegations do not contain any instances of alleged concerted action or agreement to deprive Plaintiff of his constitutional rights after 2013. Rather, Plaintiff's complaint merely includes conclusory statements that Defendants conspired to violate his rights. Therefore, Plaintiff's claims against Defendants for conspiring together to deprive Plaintiff of his constitutional rights fail to state a claim.

### d. Section 1983 - City Council Members and Mayor

Although Plaintiff does not specifically identify 42 U.S.C. § 1983 in his complaint, Plaintiff's complaint clearly alleges that all Defendants violated his constitutional rights. Section 1983 is the statute that provides a "remedy for constitutional violations committed by state officials." *Gallagher v. Neil Young Freedom Concert*, 49 F.3d 1442, 1447 (10th Cir. 1995).

Defendants move for dismissal of all Section 1983 claims on the basis that Plaintiff has failed to state a claim. Plaintiff's allegations pertaining to the city council members and the mayor all state as follows:

> Plaintiff claims that City of Wichita, City Council Member District I, Lavonta Williams[5]; did under color of law and/or in her individual capacity, did with malicious intent, and/or wanton misconduct, and/or with reckless disregard violated Plaintiff's rights under the U.S. Constitution by conspiring with other members of the city council and members of the Wichita Police Department and then voting for on or about June 21, 2013 for the passage of Wichita City Ordinance, Chapter 5.20 Camping on Public Property Without A Permit violating and depriving Plaintiff of rights under the following Amendments of the U. S. Constitution[.]

(Doc. 1 at 17-18.)

Clearly, the allegations surrounding these Defendants pertain to their actions in passing the ordinance back in June 2013. As Plaintiff's claims regarding that action are untimely and Plaintiff has failed to allege any actions taken by Defendants Williams, Meitzner, Clendenin, Blubaugh, Fry, Miller and Longwell after 2013, the Section 1983 claims against these Defendants are dismissed as barred by the statute of limitations.

### e. Section 1983 - Defendants Stull and Nienstedt

Defendants move for dismissal of the claims against Wichita Police Officers Stull and Nienstedt on the basis that Plaintiff's complaint wholly lacks any factual allegations regarding these Defendants. The court agrees. Plaintiff's complaint alleges that these officers conspired to

---

[5] Plaintiff's complaint sets forth a new section for each named Defendant. The allegations, however, pertaining to the city council members and the mayor are identical in each section. (See Doc. 1 at 17-41.)

enact the camping ordinance, seized his belongings and moped[6], and forced him to stay in the shelter. (Doc. 1 at 50-53; 57-61.) The allegation regarding the enacting of the ordinance is barred by the statute of limitations. The remaining allegations are all conclusory. It is clear by the facts alleged in the complaint that Plaintiff has failed to allege any actual conduct by Defendants Stull and Nienstedt.

In order to state a claim against a public official, a plaintiff may not rely on the theory of respondeat superior for the actions of co-workers or subordinates. Rather, Plaintiff must plead facts showing that Stull and Nienstedt, through their own individual actions, have violated the Constitution. *Ashcroft v. Iqbal*, 556 U.S. 662, 676, 129 S. Ct. 1937, 1948 (2009). Plaintiff's complaint must "make clear exactly who is alleged to have done what to whom, to provide each individual with fair notice as to the basis of the claim against him or her." *Robbins v. Oklahoma*, 519 F.3d 1242, 1250 (10th Cir. 2008) (citing *Twombly*, 127 S. Ct. at 1970–71 n. 10).

Plaintiff's claims against Stull and Nienstedt do not allege any actions that they have taken with respect to Plaintiff's rights. Therefore, Plaintiff's claims against Stull and Nienstedt must be dismissed.

### f. Defendant Berg

Defendants move to dismiss claims against Officer Berg on the basis that they fail to state a claim and that she is entitled to qualified immunity. The sole facts pertaining to Defendant Berg revolve around a phone call between Berg and Plaintiff. In that call, Plaintiff alleges that Berg advised Plaintiff of the no camping ordinance, claimed that the City may take whatever they want and failed to call him back. (Doc. 1 at 6-7.) These allegations fail to state a claim.

---

[6] Plaintiff's conclusory claims are identical against each named Defendant. (Doc. 1 at 50-53; 57-61.) However, the facts alleged do not state any allegations of specific conduct regarding these defendants and the seizure of Plaintiff's property. The complaint implies that some member of the HOT Team seized Plaintiff's tent but there is no allegation of who actually removed the tent. Plaintiff appears to blame the theft of his moped on the HOT Team because he was forced to go to the Shelter but not because a member of the HOT Team actually seized his moped.

Although Berg allegedly stated that the City can take what it wants, there are no facts in the complaint that allege that Berg took Plaintiff's property. Moreover, Berg's failure to call Plaintiff, in and of itself, does not violate his constitutional rights nor does Plaintiff allege any cognizable injury due to Berg's actions.

The court finds that the allegations in the complaint fail to state a claim under section 1983 against Defendant Berg.

### g. Defendant Schwiethale

Defendants move to dismiss claims against Officer Schwiethale on the basis that they fail to state a claim and that Schwiethale is entitled to qualified immunity. With respect to Schwiethale's actions, the complaint alleges that Schwiethale questioned him early on the morning of November 15, 2016. Plaintiff allegedly had permission to sleep on the property and Schwiethale had been dispatched to the area in response to a complaint about an individual sleeping on the property. Plaintiff claims that Schwiethale asked him questions on November 15 and on three other occasions. (Doc. 1 at 9-10.) Plaintiff was never arrested by Schwiethale or any other Wichita officer for a violation of the camping ordinance. Plaintiff alleges that Schwiethale's conduct violated his constitutional rights.

Plaintiff's allegations clearly state that Schwiethale was investigating a report of someone sleeping in violation of the camping ordinance. "An officer can stop and briefly detain a person for investigative purposes if the officer has a reasonable suspicion supported by articulable facts that criminal activity may be afoot, even if the officer lacks probable cause." *Cortez v. McCauley*, 478 F.3d 1108, 1115 (10th Cir. 2007). Therefore, his actions did not violate Plaintiff's Fourth Amendment rights. Moreover, Plaintiff was not arrested nor has Plaintiff

alleged any other actionable injury due to Schwiethale's questioning. Plaintiff's complaint fails to identify the circumstances of the other interactions with Schwiethale.

Therefore, Plaintiff has failed to state a claim as the allegations do not establish a constitutional violation.[7]

### h. City of Wichita

Defendants also move for dismissal of Plaintiff's claims against the City and the claims against the individual City Defendants in their official capacity. Plaintiff responds that he has not brought any claims against the City and consents to the dismissal of the City from this action. (Doc. 28 at 53-54; 31 at 16-17). Plaintiff also does not oppose the dismissal of the official capacity claims against the individual Defendants. (Doc. 31 at 16-17.)

The court notes that Plaintiff is proceeding pro se. A court is to liberally construe a pro se Plaintiff's pleadings. *Hall v. Bellmon*, 935 F.2d 1106, 1109 (10th Cir. 1991). However, the court is not to assume a role of advocate or craft legal theories. *Id.* at 1110. Therefore, the court's role cannot be to force Plaintiff to proceed against the City to seek the relief that he is requesting in his complaint. Plaintiff has clearly stated that he is unopposed to dismissing the City from this action and refers to claims against the City as "nonexistent." (Doc. 31 at 17.) Therefore, Defendants' motion to dismiss the claims against the City is granted as uncontested.[8]

Alternatively, the court grants Defendants' motion to dismiss for the reasons stated in Defendants' memorandum. (Doc. 30 at 17-29.)[9] With respect to the actions taken by the individual Defendants, the claims against the City are subject to dismissal as the court has

---

[7] Because Plaintiff's complaint fails to sufficiently allege a violation of his constitutional rights by the officers named in the complaint, the officers would also be entitled to qualified immunity. *Pearson v. Callahan*, 555 U.S. 223, 232, 129 S. Ct. 808, 816 (2009).

[8] The official capacity claims are subject to dismissal as they are redundant of any claims against the City. *See, e.g., Stewart v. City of Prairie Vill., Kan.*, 904 F. Supp. 2d 1143, 1161 (D. Kan. 2012).

[9] Plaintiff points out that Defendants' heading in section IX of their brief states that the ordinances do not violate "Defendant's" constitutional rights. (Doc. 31 at 17.) This is clearly a typographical error as the substance of the argument in the entire section discusses the sufficiency of Plaintiff's claims against the City. (Doc. 30 at 17-29.)

determined that Plaintiff's complaint fails to allege that a state actor violated Plaintiff's constitutional rights. *See Estate v. Larson*, 511 F.3d 1258, 1264 (10th Cir. 2008) ("without the predicate constitutional harm inflicted by an officer, no municipal liability exists.")

Plaintiff's complaint also contends that the camping ordinance violates his rights under the First, Fourth, Fifth, Sixth, Eighth, Ninth and Fourteenth Amendments. (Doc. 1 at 10-16.) Plaintiff's allegations are wholly conclusory and fail to state a claim. Plaintiff's claims are based on his alleged constitutional right to be homeless. The Supreme Court has not held that there is a constitutional right to be homeless. Moreover, courts have not recognized the homeless as a suspect class. *See Sanchez v. City of Fresno*, 914 F. Supp. 2d 1079, 1108–09 (E.D. Cal. 2012) (discussing cases); *Anderson v. Herbert*, No. 2:13-CV-211, 2014 WL 6769907, at *5 (D. Utah Dec. 1, 2014). This court declines to find that Plaintiff, as a homeless man, is a member of a suspect class.

With respect to the allegations that the ordinance violates Plaintiff's constitutional rights, Plaintiff's allegations are conclusory. Although Plaintiff alleges that the ordinance violates his First Amendment rights, he fails to identify how the First Amendment applies to the conduct targeted by the ordinance. *See Clark v. Community for Creative Non–Violence*, 468 U.S. 288, 293 n. 5, 104 S. Ct. 3065 (1984) (it is a plaintiff's burden to identify how the First Amendment applies to conduct). Plaintiff's conclusory allegations regarding other constitutional violations meet a similar fate. Plaintiff merely restates the rights under those amendments and claims that the camping ordinance violates the same. That is not sufficient to state a claim. *Twombly*, 550 U.S. at 555, 127 S. Ct. at 1965.

In *Joel v. City of Orlando*, 232 F.3d 1353 (11th Cir. 2000), the Eleventh Circuit upheld a no camping ordinance. The court held that the ordinance did not violate the Eighth Amendment

by criminalizing involuntary behavior. *Id.* at 1362. The court reasoned that the Constitution allows the city to regulate where camping occurs and that it was not criminalizing homelessness because the city shelters had never reached capacity and never turned an individual away. *See id.* In cases that found a violation of the Eighth Amendment, the courts explicitly relied on the lack of shelter space and reasoned that the ordinances were criminalizing involuntary behavior. *Id.* The camping ordinance at issue does not criminalize involuntary behavior as an individual cannot be charged with a violation of the camping ordinance when there are no open beds in a shelter. Therefore, the camping ordinance specifically targets voluntary conduct and does not violate Plaintiff's Eighth Amendment rights. *See id.*

Finally, Plaintiff claims that the ordinance is overly broad and unconstitutionally vague. Plaintiff, however, wholly fails to identify how it is overly broad or unconstitutionally vague. Therefore, Plaintiff's complaint fails to state a claim.

### i. Taking of Property

Liberally construed, Plaintiff's complaint alleges that the City, presumably an unknown officer with the HOT Team, removed his tent and belongings without Due Process. Plaintiff's complaint fails to state this claim against the City because Plaintiff has failed to sufficiently allege that an officer or other City employee removed his property. Plaintiff's vague allegations regarding the white van seen two days prior to the removal of his tent do not sufficiently allege that a City officer removed his property. Nevertheless, even if Plaintiff's complaint could be construed to allege that an officer of the City removed Plaintiff's tent and belongings, Plaintiff's complaint fails to state a claim under federal law for the following reasons: 1) Plaintiff has failed to allege a municipal policy behind the removal of his property and 2) Plaintiff has failed to allege that he lacks an adequate remedy under state law.

With respect to any removal or seizure of Plaintiff's property, Plaintiff has failed to allege a municipal policy that was the moving force behind the alleged deprivation. As the camping ordinance does not authorize such action, the ordinance cannot be the basis to establish a municipal policy. Rather, Plaintiff must allege a policy or custom of the City to deprive belongings without notice in order to state a claim. *Larson*, 511 F.3d at 1264. Plaintiff has not done so.

Moreover, although Plaintiff's complaint does not specifically allege who took action in removing the property, the law is well settled that Plaintiff must allege facts showing the lack of an adequate state remedy for the deprivation in order to state a Fourteenth Amendment claim for violation of due process. *Gee v. Pacheco*, 627 F.3d 1178, 1194 (10th Cir. 2010) (citing *Hudson v. Palmer*, 468 U.S. 517, 533, 104 S. Ct. 3194 (1984)). "[A]n unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful post-deprivation remedy for the loss is available," and "the state's action is not complete until and unless it provides or refuses to provide a suitable post-deprivation remedy." *Id.* (quoting *Hudson*, 468 U.S. at 533). Kansas law provides post-deprivation remedies to individuals who believe they have suffered a tortious loss at the hands of state officials. *Haynes v. Attorney General of Kan.*, No. 03-4209, 2005 WL 2704956 at *5 (D. Kan. 2005). Plaintiff could have filed a claim for replevin, conversion, or a claim under the Kansas Tort Claims Act. *Roman v. FNU LNU Unknown State & Local Officials, Barton Cty., Kan.*, No. 12-3065-SAC, 2012 WL 1970384, at *4 (D. Kan. June 1, 2012). These procedures satisfy process and are adequate post-deprivation remedies for the harm alleged in Plaintiff's complaint. *See id.*

Because Plaintiff's complaint does not allege that tort actions available under state law are an inadequate remedy, there is no constitutional deprivation of property without due process of law for purposes of the Fourteenth Amendment or § 1983. *Pacheco v. Wagnon*, 2008 WL 755059 at *5 (D. Kan. 2008); *Roman*, 2012 WL 1970384, at *4 ("when a plaintiff alleges deprivation of a property interest occurring as a result of 'a random, unauthorized act,' the Fourteenth Amendment's due process requirement is satisfied if the state provides an adequate post-deprivation remedy.") Nor is there any taking of property in violation of the Fifth Amendment. *See City of Monterey v. Del Monte Dues at Monterey, Ltd.*, 526 U.S. 687, 714–15, 119 S. Ct. 1624, 1640-41 (1999); *Wilson v. United States*, 29 F. App'x 495, 496–97 (10th Cir. 2002).

Plaintiff has not alleged a plausible constitutional deprivation of property claim.

## IV. Conclusion

Defendants' motion to dismiss (Doc. 24) is GRANTED. Plaintiff's motion to deny/strike Defendants' motion to dismiss (Doc. 27) is DENIED AS MOOT.

IT IS SO ORDERED this 26th day of September, 2018.

_____s/ John W. Broomes_____
JOHN W. BROOMES
UNITED STATES DISTRICT JUDGE
